IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MICHAEL GHANNOUM, § § Plaintiff, § § v. § § QATAR AIRWAYS Q.C.S.C. d/b/a § QATAR AIRWAYS Q.C.S.C. § CORPORATION, § § Defendant. § | CIVIL ACTION NO. H-13-2994 |

MEMORANDUM AND ORDER

Pending is Defendant Qatar Airways Q.C.S.C. d/b/a Qatar Airways Q.C.S.C. Corporation's Motion to Dismiss for *Forum non Conveniens* (Document No. 8). After having carefully considered the motion, supplemental brief, response, reply, oral arguments, and applicable law, the Court concludes as follows.

I.  Background

In April 2008, Plaintiff Michael Ghannoum ("Plaintiff"), a resident of Bexar County, Texas, was hired to work as a pilot for Defendant Qatar Airways Q.C.S.C. d/b/a Qatar Airways Q.C.S.C. Corporation ("Defendant"), pursuant to a written employment contract ("the Employment Contract").[1] Defendant is entirely owned

---

[1] Document No. 1, ex. B ¶¶ 2, 7, 9 (Orig. Pet.); Document No. 9 at 2 ¶ 7.

by the government of Qatar, and Plaintiff's employment was based in Qatar, where he resided under a Qatari resident permit.[2]

Plaintiff contends that on May 9, 2013, Defendant's CEO Akbar Al Baker ("Al Baker") "made several demeaning and false allegations" to Plaintiff concerning Plaintiff's relationship with a flight attendant employed by Defendant, and displayed to Plaintiff pictures taken of Plaintiff while he was in a private setting.[3] Al Baker placed Plaintiff on suspension, and allegedly "threatened to 'black list' PLAINTIFF all over the Persian Gulf."[4] On June 4, 2013, Al Baker terminated Plaintiff.[5] Plaintiff alleges that Al Baker did not tell Plaintiff why he was being terminated, and that Plaintiff did not receive payment for his work in June 2013.[6]

Plaintiff further alleges that upon his termination, Defendant withheld from Plaintiff the return of $40,000 for 24 days, cancelled Plaintiff's Qatari resident permit, and withheld Plaintiff's passport for 22 days, which prevented him from leaving

---

[2] Document No. 9 at 1-2 ¶¶ 4, 8.

[3] Document No. 1, ex. B ¶ 7.

[4] Id. Plaintiff was removed from suspension on May 16, but was suspended again on June 2. Id., ex. B ¶ 8.

[5] Id., ex. B ¶ 8.

[6] Id.

2

the country.[7]  As a result, Plaintiff was unable to attend scheduled interviews in other countries with Fly Dubai and Air Arabia.[8] Plaintiff also alleges that Defendant made "false and disparaging statements" about Plaintiff to his prospective employers.[9]

Plaintiff contends that on June 24, 2013, Defendant forced him, "under duress due to the threat of exile" from the Persian Gulf, to sign documents releasing Defendant from any claims by Plaintiff.[10] Plaintiff alleges that he was ultimately deported from Qatar due to Defendant's refusal to release his passport and resident permit,[11] and that he cannot return to the country for two to four years due to certain provisions of Qatari law.  Plaintiff now brings suit for tortious interference with prospective relations, intentional infliction of emotional distress, intrusion on seclusion, public disclosure of private facts, defamation, and business disparagement.[12]  Defendant moves to dismiss on the basis

---

[7] <u>Id.</u>, ex. B ¶ 9.

[8] <u>Id.</u>

[9] <u>Id.</u>

[10] <u>Id.</u>, ex. B ¶ 10.

[11] <u>Id.</u>

[12] Document No. 1, ex. B.

of *forum non conveniens*, contending that Qatar is a more convenient forum for the resolution of Plaintiff's claims.[13]

During oral arguments on August 28, 2014, Defendant conceded that Qatar would not be an adequate, available forum for Plaintiff to pursue his claims if he could not reenter Qatar, represented to the Court that Defendant would do everything within its power to facilitate Plaintiff's reentry into Qatar to allow him to file and pursue his claims there, and stated that 120 days is a reasonable period of time to wait for Qatar's immigration authority to determine if Plaintiff is allowed to reenter Qatar to file and prosecute the claims he alleges in this case.

## II. Discussion

### A. Legal Standard

"The *forum non conveniens* determination is committed to the sound discretion of the trial court." Piper Aircraft Co. v. Reyno, 102 S. Ct. 252, 266 (1981). When applying the doctrine, however, a district court should use the controlling procedural framework set out by the Fifth Circuit in In re Air Crash Disaster Near New Orleans, La., 821 F.2d 1147 (5th Cir. 1987) (en banc), *vacated on other grounds sub nom.* Pan Am. World Airways, Inc. v. Lopez, 109 S. Ct. 1928 (1989), *reinstated except as to damages by* In re Air Crash

---

[13] Document No. 8.

4

Disaster Near New Orleans, La., 883 F.2d 17 (5th Cir. 1989) (en banc). The procedural framework involves a three-step analysis that requires: (1) determining if an alternative forum exists; (2) considering the "relevant factors of private interest, weighing in the balance the relevant deference given the particular plaintiff's initial choice of forum"; and (3) weighing the relevant public interest, if the private interests are either nearly in balance or do not favor dismissal. Id. at 1165-66.

This framework is modified if the parties' dispute is within the scope of a valid forum selection clause. Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex., 134 S. Ct. 568, 581-82 (2013).[14] Because a forum selection clause "may have figured centrally in the parties' negotiations" and "may, in fact, have been a critical factor in their agreement to do business together in the first place," the court should enforce a valid forum selection clause "[i]n all but the most unusual cases." Id. at 583. If a valid forum selection clause applies, "the Plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden" of establishing that dismissal in favor of the foreign forum for

---

[14] Atlantic Marine dealt with a transfer to another federal district court under 28 U.S.C. § 1404(a), but the Supreme Court noted that "the same standards should apply to motions to dismiss for *forum non conveniens* in cases involving valid forum-selection clauses pointing to state or foreign forums." Atl. Marine, 134 S. Ct. at 583 n.8.

5

which the parties bargained is unwarranted. See id. at 581, 583 n.8. Furthermore, the court is not to consider arguments about the parties' private interests, because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Id. at 582.

Finally, if the district court decides dismissal is appropriate, it must nonetheless "ensure that a plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." Air Crash, 821 F.2d at 1166. Moreover, the court must enable the plaintiff to return to the American forum "if the defendant obstructs such reinstatement in the alternative forum." Id.

B.  Qatar as an Available, Adequate Forum

"An alternative forum exists when it is both available and adequate." Saqui v. Pride Cent. Am., LLC, 595 F.3d 206 (5th Cir. 2010) (citing Air Crash, 821 F.2d at 1165). A forum is available when "the entire case and all parties can come within the jurisdiction of that forum." Id. Plaintiff argues that Qatar is not an available forum because Plaintiff's claims are barred by the statute of limitations.[15] However, Defendant has agreed to submit

---

[15] Document No. 17 at 8.

itself to the jurisdiction of Qatar and to waive any statute of limitations defenses.[16] See id., 595 F.3d at 212 ("Here, PCA has agreed to submit to the jurisdiction of the Mexican court, thereby making Mexico an available forum.").

Plaintiff further argues Qatar is not an available forum because, under Qatari law, Plaintiff is forbidden to reenter the country for two to four years. Plaintiff exhibits two articles of Qatari law that he states prevent his reentry.[17] At oral argument,

---

[16] Document No. 8 at 8; Document No. 9 at 3 ¶ 15 (Decl. of Captain Suhail Ismaeel, Chief Operations Officer for Defendant).

[17] Document No. 17 at 8. Plaintiff exhibits two articles from Law No. 4 of 2009 Regarding Regulation of the Expatriates Entry, Departure, Residence and Sponsorship. Article 4 provides:

> An entry visa may not be granted to an Expatriate who was previously a resident in the State of Qatar for employment purposes until two years have elapsed from the date of departure. The Minister or his authorized representative may waive this period and the competent authority may, subject to a written approval from the ex sponsor, grant an exemption from the period so specified.

Id., ex. A at 1 of 2. Article 14 states:

> Should an employee [have] been terminated of the employment pursuant to the provisions of Article 61 of the Labor Law, the provisions of the laws governing the State personnel, or of any other law, and the employee decides not to appeal the decision before the court of jurisdiction or if such appeal is unsuccessful, he may not return to the country within four years from the date of departure.

Id., ex. A at 2 of 2. Plaintiff argues that he was deported from Qatar, and is precluded from entering the country. Document No. 17 at 8. Defendant's expert on Qatari law summarily states without explanation that "Plaintiff was not deported at all." Document No. 21 at 6 of 10 ¶ 4. In any event, the text of the Qatari laws

7

Defendant conceded that Qatar would not be an available forum if Plaintiff is unable fully to enter Qatar as needed to file and prosecute to conclusion his lawsuit, and represented that Defendant would do everything within its power to facilitate Plaintiff's receiving whatever governmental permission is required for this purpose. Accordingly, the Court finds that Qatar is an available forum provided that Plaintiff is permitted by that forum to enter Qatar and freely to come and go as needed to prosecute his lawsuit against Defendant.

Qatar is an adequate forum. A forum is adequate when "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American Court." Gonzalez v. Chrysler Corp., 301 F.3d 377, 379-80 (5th Cir. 2002) (quoting Air Crash, 821 F.2d at 1165). While less favorable standards or lower potential recovery do not render an alternative forum inadequate, there may exist "rare circumstances" where the remedy offered by a forum is "clearly unsatisfactory," such as when "the alternative forum does not permit litigation of the subject matter of the dispute." Piper Aircraft, 102 S. Ct. at 265 n.22; see also Gonzalez, 301 F.3d at 380. Such rare circumstances have not been shown to be present here. Defendant's Qatari law expert, Michael Palmer, avers that

---

quoted by Plaintiff do not appear to condition Plaintiff's reentry on whether or not he was deported.

8

Qatar has an independent court system that provides due process of law, and the fact that Defendant is owned entirely by the Qatari government should have no influence on an action brought by Plaintiff in Qatar.[18] Palmer further explains that while the Qatari Civil Code generally does not recognize specific causes of action, it follows the general principle that a person is liable for damages if he injures another, and thus, Plaintiff may be able to recover on his claims in Qatar.[19] Accordingly, the Court finds that Qatar is an adequate forum. *See* Kinney v. Occidental Oil & Gas Corp., 109 F. App'x 135, 136 (9th Cir. 2004) ("We conclude that the district court did not abuse its discretion when it determined that an adequate forum for the adjudication of Kinney's action is available in Qatar, where Occidental stipulated to the jurisdiction of the Qatari Labor Court, agreed to toll the statute of

---

[18] Document No. 9 at 12 ¶¶ 8-9. Plaintiff objects that Palmer is not a competent expert because he is not a citizen of Qatar or a Gulf Cooperation Council (GCC) country, and Qatari law states that he must be so in order to be entered onto the "Roll of Practicing Lawyers." Document No. 17 at 13; *id.*, ex. C (Article 13 of Law (23) for year 2006 regarding Enacting the code of law practice). However, Palmer who is Of Counsel in the Doha, Qatar office of the law firm Patton Boggs LLP, explains that Patton Boggs LLP is licensed by the Qatari Minister of Justice, and that as an employee of the firm, Palmer was permitted to be licensed in Qatar. Document No. 21 at 5 of 10 to 6 of 10. Defendant exhibits the licenses for Patton Boggs LLP and for Palmer. *Id.* at 8 of 10 to 10 of 10. The Court finds Palmer is qualified to opine on Qatari law.

[19] Document No. 9 at 12 ¶¶ 6-7 ("If the Plaintiff presented sufficient proof to establish that he was injured as a result of Defendant's alleged actions, he may be able to recover actual damages, including damages for emotional or psychological injuries.").

limitations applicable to Kinney's claims from the date on which she filed her action in the district court, and presented evidence that Kinney would have a remedy in a Qatari court.").

C.  Balance of Private and Public Interest

    1.  Private Interest

If a plaintiff's claims come within the scope of a valid forum selection clause, the district court must consider the private interest factors to weigh entirely in favor of the preselected forum. Atl. Marine, 134 S. Ct. at 582. In interpreting the scope of a forum selection clause, the court is to look to the language of the parties' contracts. Marinechance Shipping, Ltd. v. Sebastian, 143 F.3d 216, 222 (5th Cir. 1998).

The Employment Contract states that Plaintiff's "employment shall be governed by the laws of the State of Qatar. Any dispute shall be referred to the Qatari Courts and shall be construed in accordance with its laws."[20] Plaintiff argues that his claims are tort claims which occurred after Plaintiff was terminated, and are not related to the Employment Contract.[21] However, the Fifth Circuit in a similar case rejected a contract/tort distinction in determining the scope of a forum selection clause. Id. at 221-22

---

[20] Id. at 6 ¶ 13.

[21] Document No. 17 at 2.

10

(holding forum selection clause in seamen's employment contract covering "any and all disputes or controversies arising out of or by virtue of this Contract" included tort causes of action arising in the course of the seamen's employment). Because Plaintiff's claims arise out of Defendant's alleged conduct related to the termination of Plaintiff's employment and are intertwined with Plaintiff's alleged conduct during his employment, and the Employment Contract covers any dispute related to his employment, the forum selection clause applies. Accordingly, the private interest factors are deemed to weigh in favor of the case being adjudicated in Qatar.[22]

---

[22] Even if Plaintiff's claims were not within the scope of the forum selection clause, the private interest factors nonetheless weigh in favor of a Qatari forum. Factors relevant to the parties' private interests are: (1) the relative ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of viewing any relevant premises; and (5) all other practical factors that make trial expeditious and inexpensive. Saqui, 595 F.3d at 213. All of the proposed witnesses, other than Plaintiff, are located in Qatar or the Middle East. See Document No. 16 at 2-3; Document No. 17 at 10. It will be less costly for these witnesses to attend proceedings in Qatar, and Qatar has procedures for compelling the attendance of any unwilling witnesses located within its borders. Document No. 9 at 12 ¶ 11. Furthermore, Defendant's principal office is in Qatar, and Plaintiff's employment file is located there. Id. at 1-3 ¶¶ 4, 6. Accordingly, the Court finds that, if applied, the private interest factors would weigh in favor of Qatar.

2.  Public Interest

The public interest factors are: (1) the administrative difficulties arising from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in trying a diversity case in a forum that is at home with the governing law; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. Saqui, 595 F.3d at 214.

Qatar has a more substantial interest in this controversy than the Southern District of Texas. Defendant is organized under Qatari law, has its principal place of business in Qatar, and is owned by the Qatari government. The relationship between Plaintiff and Defendant arises under the Employment Contract, which contains Qatari choice-of-law and choice-of-forum clauses. Furthermore, all the events at issue took place in Qatar. While Texas may have an interest in the hiring and firing of an American citizen by a foreign corporation, Qatar's interest in resolving the present controversy outweighs the interest of this district. *See* Forsythe v. Saudi Arabian Airlines, Corp., 885 F.2d 285, 291 (5th Cir. 1989) (finding Saudi Arabian interest outweighed that of United States where employment contract underlying lawsuit was executed and breached in Saudi Arabia, contained Saudi Arabian choice-of-law and choice-of-forum provisions, and defendant was a corporation wholly

owned by the Saudi Arabian government) ("We acknowledge that our community has an interest in the hiring and firing of American citizens by foreign corporations; however, in this situation, Saudi Arabia appears to have a greater interest in resolving this dispute than does the United States.").

The public interest factors related to the application of foreign law also weigh in favor of dismissal.[23] Federal courts apply the forum state's conflicts-of-law rules to determine what law governs. Klaxon Co. v. Stentor Elec. Mfg. Co., 61 S. Ct. 1020, 1021 (1941). Texas applies the "most significant relationship test," found in the Restatement (Second) of Conflict of Laws (1971), to decide choice-of-law issues. Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 420-21 (Tex. 1984). Section 6 of the Restatement describes the general principles relevant to the choice of law analysis: the needs of the interstate and international systems; the relevant policies of the forum and other interested states; the relative interests of other interested states; the protection of justified expectations; the basic policies underlying the field of law; certainty, predictability and uniformity; and ease in the determination and application of the law. Restatement (Second) of Conflict of Laws § 6. In analyzing these general

---

[23] A complete choice of law analysis is neither prohibited nor required when considering the public interest factors. See Quintero v. Klaveness Ship Lines, 914 F.2d 717, 725 (5th Cir. 1990); Perforaciones Exploración y Producción v. Marítimas Mexicanas, S.A. de C.V., 356 F. App'x 675, 680 (5th Cir. 2009).

13

principles as applied to tort claims, courts consider: the place of injury; the place of the conduct causing the injury; the domicil, residence, nationality, place of incorporation, and place of business of the parties; and the place where the relationship between the parties is centered. Id. § 145.

Defendant is a Qatari corporation with its principal place of business in Qatar. Plaintiff was employed by Defendant in Qatar, pursuant to an Employment Contract with Qatari choice-of-law and choice-of-forum provisions, and resided in Qatar under a Qatari resident permit. Plaintiff and Defendant's relationship is undoubtedly centered in Qatar. Furthermore, Defendant's allegedly tortious conduct was committed in Qatar, and Plaintiff was injured in Qatar. Qatar has the most significant relationship to Plaintiff's tort claims, and Qatari law applies, which weighs in favor of a *forum non conveniens* dismissal from this Court. Therefore, both the private and public factors support dismissal for *forum non conveniens* in favor of a Qatari forum.

### III. Order

For the foregoing reasons, it is

ORDERED that Defendants' Motion to Dismiss for *Forum Non Conveniens* (Document No. 8) is conditionally GRANTED, and this case is DISMISSED upon the following conditions:

14

1. Plaintiff within 45 days after the date of this Order shall proceed with diligence to apply to Qatar for a visa or visas, or such other permit(s) as Qatar may require Plaintiff to obtain to allow Plaintiff to enter and freely to remain in Qatar, and to exit and reenter Qatar from time to time as may be necessary for Plaintiff to retain counsel, and to do whatsoever may be necessary to file and to prosecute to conclusion in the courts of Qatar his lawsuit against Defendant.

2. Defendant forthwith shall in good faith diligently take all lawful actions within its power to help facilitate and support Plaintiff's application for such visa(s) or other permits(s) as may be required to allow him to file and prosecute his lawsuit in Qatar as above described.

3. If the government of Qatar within 120 days after the date that Plaintiff applies to Qatar for such visa(s) or permit(s) as may be required, should either deny or fail to act on Plaintiff's application, then Plaintiff may make verified proof of his diligent efforts to seek such permission, and of Qatar's denial of or failure to act on his application, to demonstrate that Qatar is not an adequate forum available to him for the filing and prosecution of his case.

4. In the event that the government of Qatar within the 120 days specified above grants to Plaintiff such visa(s) and permit(s) as required for him freely to enter and exit Qatar to file and prosecute his case in the courts of Qatar, Plaintiff shall proceed within 45 days thereafter to file his claim in the courts of Qatar, and not later than 45 days thereafter, Defendant shall appear and answer such lawsuit, fully waiving and relinquishing any defense(s) based upon statutes of limitations, laches, lack of personal jurisdiction, improper service of process, or the counterparts to such doctrines under the laws of Qatar, and shall otherwise fully join issue on the merits in the litigation for purposes of Plaintiff's claim being decided on the merits in the foreign venue. In the event that waiver of such statute of limitations is not permitted under the laws of Qatar, this condition shall not have been met, and Plaintiff may, upon filing verified proof of such, apply for reinstatement of his claims against Defendant in this Court.

If Plaintiff is unable despite his diligent efforts to obtain permission to enter Qatar to file and prosecute his lawsuit as contemplated by this Order, or if the courts of Qatar over Plaintiff's opposition should decline to accept a case properly filed by Plaintiff against Defendant, or if Defendant should fail to respond, to join issue on the merits within the time allowed, and/or to make the necessary waivers or agreements, then this case may be reinstated in this Court upon application by Plaintiff accompanied by a verified statement of the grounds for such reinstatement.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 2nd day of September, 2014.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE